UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RONALD MARSHALL** | **CIVIL ACTION** |
| **VERSUS** | **NO: 18-13569** |
| **JAMES LEBLANC ET AL.** | **SECTION: "H"** |

## ORDER AND REASONS

Before the Court is Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 39). For the following reasons, the Motion is DENIED.

## BACKGROUND

Plaintiff Ronald Marshall, a state prisoner, filed the instant action *pro se* in December 2018, alleging that he has been denied adequate medical care in violation of 42 U.S.C. § 1983 at Rayburn Correctional Center ("Rayburn") where he is housed. Specifically, Plaintiff alleges that Defendants refuse to provide him with antiviral medications for the treatment of Hepatitis B and Hepatitis C. In his Complaint, Plaintiff named as defendants, in their official and individual capacities, James LeBlanc, Secretary of Louisiana Department

1

of Public Safety and Corrections; Robert Tanner, Warden at Rayburn; Beverly Kelly, Assistant Warden of Medical Treatment at Rayburn; and Dr. Robert Cleveland, Medical Director at Rayburn. Defendants filed a motion to dismiss Plaintiff's claims.

This Court granted in part Defendants' Motion to Dismiss, maintaining only Plaintiff's individual capacity claim against Defendant Cleveland and official capacity claims for injunctive relief against Defendants LeBlanc, Tanner, and Kelly. The Court granted Plaintiff leave to amend his Complaint and appointed pro bono counsel to assist him. Plaintiff then filed an amended complaint on May 8, 2020, reasserting claims against Cleveland, LeBlanc, Tanner, and Kelly in their individual and official capacities.[1] In addition, Plaintiff added claims arising out of the COVID-19 pandemic. Plaintiff alleges that Rayburn has failed to implement policies to protect against the spread of the disease in the facility and brings a claim for unlawful conditions of confinement in violation of the Eighth and Fourteenth Amendment.

Prior to amending his Complaint, Plaintiff, through appointed counsel, filed the instant Motion for Temporary Restraining Order and Preliminary Injunction. Plaintiff seeks an injunction requiring Defendants to implement protective measures in compliance with the Center for Disease Control's recommendations to protect Plaintiff, who has underlying medical conditions, from the spread of COVID-19 at Rayburn. Defendants oppose on several grounds.

---

[1] Plaintiff also added a claim against Randy Lavespere, the Interim Medical Director for the Louisiana Department of Corrections, in his official capacity.

## LEGAL STANDARD

An applicant for preliminary injunctive relief must show: (1) a substantial likelihood that he will prevail on the merits; (2) a substantial threat that he will suffer irreparable harm if the injunction is not granted; (3) his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin; and (4) granting the preliminary injunction will not disserve the public interest.[2] A preliminary injunction is an extraordinary remedy.[3] Accordingly, a preliminary injunction should only be granted when the party seeking it has clearly carried the burden of persuasion on all four requirements.[4] A preliminary injunction is treated as an exception rather than the rule.[5]

## LAW AND ANALYSIS

At the outset, Defendants argue that Plaintiff's claims regarding Rayburn's failure to implement policies preventing the spread of COVID-19 are not properly before the Court. After this Court granted in part Defendants' Motion to Dismiss, it gave Plaintiff leave to amend his Complaint. Defendants complain that, while Plaintiff was allowed to amend his Complaint to address the ruling on the Motion to Dismiss, Plaintiff did not have or seek leave to supplement his Complaint with new claims arising out of the COVID-19 pandemic.

---

[2] Lake Charles Diesel, Inc. v. Gen. Motors Corp., 328 F.3d 192, 195–96 (5th Cir. 2003).
[3] Miss. Power & Light Co. v. United Gas Pipe Line, Co., 760 F.2d 618, 621 (5th Cir. 1985).
[4] *Id.*
[5] State of Tex. v. Seatrain Int'l, S.A., 518 F.2d 175, 179 (5th Cir. 1975).

Federal Rule of Civil Procedure 15(d) states that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." "The decision to grant or deny leave to supplement is within the sound discretion of the district court."[6] Plaintiff did not properly request leave from this Court before supplementing his Complaint with claims arising out of the COVID-19 pandemic. That said, this Court would have granted such relief, and denial of his motion for injunctive relief on this ground would only serve to further delay resolution of this matter. This is especially true where Defendants requested additional time to respond to the instant motion until after Plaintiff had amended his Complaint under the guise of allowing Plaintiff to properly present his claims to the Court.[7] Their argument here—that Plaintiff's amendment improperly added the claims at issue—is contrary to this earlier position.

The Court must next consider whether Plaintiff has shown a substantial likelihood that he will prevail on the merits. Because this Court ultimately finds that Plaintiff failed to exhaust his administrative remedies prior to bringing this action, it need not address Defendants' other arguments.

The Prison Litigation Reform Act ("PLRA") requires inmates to exhaust "such administrative remedies as are available" before filing suit in federal court to challenge prison conditions.[8] This exhaustion obligation is

---

[6] Gentilello v. Rege, 627 F.3d 540, 546 (5th Cir. 2010).
[7] Doc. 51.
[8] 42 U.S.C. § 1997e(a).

4

mandatory.[9] "So long as the State's administrative procedure grants authority to take some action in response to a complaint, that procedure is considered 'available,' even if it cannot provide the remedial action an inmate demands."[10] That said, exhaustion is not required when a remedy is not available. "[T]he ordinary meaning of the word 'available' is capable of use for the accomplishment of a purpose."[11] The Supreme Court has stated that a remedy is not "available" when:

> 1. The procedure "operates as a simple dead end" because "the relevant administrative procedure lacks authority to provide any relief," or "administrative officials have apparent authority, but decline ever to exercise it."
> 2. The "administrative scheme [is] so opaque that . . . no reasonable prisoner can use them."
> 3. Or when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."[12]

Plaintiff argues that relief is unavailable here because of the urgency of the COVID-19 pandemic and the delay in receiving responses to prisoner grievances. Plaintiff alleges that he filed two complaints through Rayburn's Administrative Remedy Procedure—one on April 8 and another on April 13, 2020. Plaintiff contends that he received a response from Rayburn denying his requests and has now proceeded to the second step of the grievance process—appealing the denial to Defendant LeBlanc's office.[13] Pursuant to the

---

[9] Valentine v. Collier, 956 F.3d 797, 804 (5th Cir. 2020) (*Valentine I*) (citing Booth v. Churner, 532 U.S. 731, 741 n.6 (2001).

[10] *Id.* (internal quotations omitted).

[11] Valentine v. Collier, No. 19A1034, 2020 WL 2497541, at *1 (U.S. May 14, 2020) (*Valentine II*) (internal quotations omitted).

[12] *Valentine I*, 956 F.3d at 804 (quoting Ross v. Blake, 136 S. Ct. 1850, 1859 (2016)).

[13] Plaintiff has not provided this Court with a copy of either of his requests, his appeal, or Rayburn's response thereto.

Louisiana Administrative Code, Defendant Leblanc has 45 days within which to respond to Plaintiff's appeal.[14] However, "Superintendent LeBlanc issued an order on March 23 temporarily suspending the administrative deadlines for replying to grievances."[15] Plaintiff argues that this suspension of deadlines renders the administrative review process unavailable. He argues that "Defendants' wait-and-see approach would require Plaintiff to have his grievance become moot, through infection or even death, before he is allowed to bring suit."[16]

In *Valentine v. Collier*, the Fifth Circuit stayed the district court's injunction requiring a Texas prison to implement a laundry list of cleaning and social distancing protocols in response to the COVID-19 pandemic.[17] It held that the defendants were likely to succeed on the appeal in part because the plaintiffs had not exhausted their administrative remedies.[18] The district court held that the administrative review process was "too lengthy to provide timely relief, and therefore incapable of use and unavailable under the special circumstances of the COVID-19 crisis."[19] The Fifth Circuit explained:

> The Supreme Court rejected this "special circumstances" exception "as inconsistent with the PLRA." In so holding, the Court noted that the precursor to today's § 1997e(a) "would require exhaustion only if a State provided 'plain, speedy, and effective' remedies . . . ." By enacting the PLRA (which removed that proviso), Congress rejected this "weak exhaustion provision" in favor of an "invigorated" and absolute "exhaustion provision." In the Supreme

---

[14] LA. ADMIN. CODE, tit. 22, § 325(J)(1)(b).
[15] Marlowe v. LeBlanc, No. 20-30276, 2020 WL 2043425, at *3 (5th Cir. Apr. 27, 2020).
[16] Doc. 64.
[17] *Valentine I*, 956 F.3d at 805.
[18] *Id.*
[19] *Id.* at 804–05.

> Court's view, reading a "special circumstances" exception into the PLRA would undo the PLRA and "resurrect" its predecessor.
>
> The district court's understanding of the exhaustion requirement similarly revivifies the rejected portions of the old regime. The crux of the court's concern is that TDCJ has not acted speedily enough. But that was an exception to exhaustion under the old § 1997e(a), not the current one. Moreover, the district court held that TDCJ's procedure would be unduly lengthy if TDCJ were to use the full time allotted for a response to the grievance under state law. But the district court never found that TDCJ would take the full time if given the chance. The holding that the TDCJ process "presents no 'possibility of some relief,'" is therefore unsupported by the evidence.[20]

The Fifth Circuit, therefore, held that an administrative remedy was available when it "remains possible (and the procedure available)" even if the process did not move "as swiftly as Plaintiffs would like."[21]

In a memorandum opinion, the United States Supreme Court denied an application to vacate the Fifth Circuit's stay of injunction.[22] Justice Sotomayor, joined by Justice Ginsburg, wrote separately "to highlight the disturbing allegations presented below."[23] Sotomayor counseled that:

> [I]f a plaintiff has established that the prison grievance procedures at issue are utterly incapable of responding to a rapidly spreading pandemic like Covid–19, the procedures may be 'unavailable' to meet the plaintiff's purposes, much in the way they would be if prison officials ignored the grievances entirely. . . . I caution that in these unprecedented circumstances, where an inmate faces an imminent risk of harm that the grievance process cannot or does

---

[20] *Id.* at 805 (internal citations omitted).
[21] *Id.*
[22] *Valentine II*, 2020 WL 2497541, at *3.
[23] *Id.*

7

not answer, the PLRA's textual exception could open the courthouse doors where they would otherwise stay closed.[24]

In *Marlowe v. LeBlanc*, the Fifth Circuit relied on its analysis in *Valentine I* to again stay enforcement of an injunction requiring a prison—the same facility at issue here—to comply with its own internal policies and submit a plan to ensure proper social distancing and hygiene practices to prevent the spread of COVID-19.[25] The Fifth Circuit held that the defendants had a likelihood of success on appeal, in part, because the plaintiff had failed to exhaust administrative remedies. It acknowledged that the suspension of the deadline to respond to complaints "may have affected the 'availability' of exhaustion."[26] It held, however, that the plaintiff had made "no effort to explain the impact of that order on his refusing to file a grievance or on the way in which it would have been processed," and therefore held that the PLRA's exhaustion requirement could not be excused.[27]

Here too, Plaintiff has not shown how the suspension of deadlines will impact the appeal of the denial of his grievance. The suspension of deadlines does not mean—as Plaintiff suggests—that his appeal will never be addressed. In fact, Plaintiff has shown that his claim is being processed timely as it has already proceeded past the first step of the administrative remedy procedure. Plaintiff cannot show that Defendants are "utterly incapable of responding" to his grievance when they in fact have already responded.[28] This Court cannot, therefore, say that an administrative remedy is unavailable. Just as in

---

[24] *Id.*
[25] *Marlowe*, 2020 WL 2043425, at *3.
[26] *Id.*
[27] *Id.*
[28] *Valentine II*, 2020 WL 2497541, at *3.

8

*Valentine*, a remedy is available when it is possible even if it may not be addressed as quickly as Plaintiff would like. Accordingly, Plaintiff's failure to exhaust administrative remedies as required by the PLRA cannot be excused, and he cannot show a substantial likelihood that he will prevail on the merits. Plaintiff's request for injunctive relief is denied at this time.

## CONCLUSION

For the foregoing reasons, the Motion is DENIED without prejudice to the right to reurge after administrative remedies have been exhausted.

New Orleans, Louisiana this 1st day of June, 2020.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**