## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RONALD MARSHALL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-13569** |
| **JAMES LEBLANC, SECRETARY, ET AL.** | **SECTION: "H"(1)** |

## PARTIAL REPORT AND RECOMMENDATION

Plaintiff, Ronald Marshall, a state prisoner, filed the instant *pro se* civil action pursuant to 42 U.S.C. § 1983 against the following defendants:  James LeBlanc, the Secretary of the Louisiana Department of Public Safety and Corrections ("LDPSC"); Robert Tanner, the Warden of the Rayburn Correctional Center ("RCC"); Beverly Kelly, the Assistant Warden of Medical Treatment at RCC; and Dr. Robert Cleveland, the Medical Director at RCC.  The lawsuit was founded on a single alleged constitutional violation:  the defendants were acting with deliberate indifference to plaintiff's serious medical needs by refusing to provide him with antiviral medications for the treatment of Hepatitis B and Hepatitis C.[1]

After the Court appointed plaintiff counsel,[2] his counsel filed a motion for a temporary restraining order requesting that the defendants be required to implement protocols to protect plaintiff and other RCC inmates from COVID-19.[3]  Because the original complaint asserted no claims concerning COVID-19, plaintiff's counsel then filed an Amended and Supplemental Complaint adding claims that defendants LeBlanc and Tanner had violated, and continue to

---

[1] Rec. Doc. 5.
[2] Rec. Docs. 31, 32, and 33.
[3] Rec. Doc. 39.

violate, plaintiff's constitutional rights by failing to safeguard his health and safety amid the COVID-19 pandemic by implementing and enforcing policies in compliance with CDC guidelines.[4]

Defendants opposed that motion for a temporary restraining order arguing, *inter alia*, that plaintiff could not make the required showing that there was a substantial likelihood that he would prevail on the merits of his COVID-related claim because he had not exhausted his administrative remedies with respect to that claim.[5]  Plaintiff filed a reply.[6]  The United States District Judge then held that plaintiff had indeed failed to exhaust his administrative remedies on his COVID-related claim, and, therefore, he could not show a substantial likelihood that he would prevail on the merits of that claim.  She therefore denied the motion for a temporary restraining order "without prejudice to the right to reurge after administrative remedies have been exhausted."[7]

Defendants have now filed the instant motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[8]  In that motion, which concerns **only** the newly added COVID-related claim against LeBlanc and Tanner, defendants again argue that the claim, which was first raised in the Amended and Supplemental Complaint, was asserted **before** plaintiff exhausted his administrative remedies and, as a result, **must** be dismissed.  Plaintiff filed an opposition to the motion,[9] and defendants filed a reply to that opposition.[10]

---

[4] Rec. Doc. 57. The Amended and Supplemental Complaint also added a new defendant (Randy Lavespere, Interim Medical Director of LDPSC) with respect to the existing hepatitis-treatment claim.
[5] Rec. Doc. 62.
[6] Rec. Doc. 64.
[7] Rec. Doc. 65; <u>Marshall v. LeBlanc</u>, Civ. Action No. 18-13569, 2020 WL 2838577 (E.D. La. June 1, 2020).
[8] Rec. Doc. 68.
[9] Rec. Docs. 70 and 78.
[10] Rec. Doc. 81.

## I.  Applicable Law

### A.  Summary Judgment Standard

Summary judgment must be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56.  The movant has the initial burden of "showing the absence of a genuine issue as to any material fact." Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970).  The respondent must then "produce evidence or designate specific facts showing the existence of a genuine issue for trial." Engstrom v. First Nat. Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).  Evidence that is "merely colorable" or "is not significantly probative" is insufficient to defeat summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

"An issue is material if its resolution could affect the outcome of the action." Daniels v. City of Arlington, Tex., 246 F.3d 500, 502 (5th Cir. 2001).  Thus, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249.  Although the Court must "resolve factual controversies in favor of the nonmoving party," it must only do so "where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013) (quoting Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005)).  The Court must not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis omitted).

"Summary judgment is appropriate where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, or where it is so

overwhelming that it mandates judgment in favor of the movant."  Armstrong v. City of Dallas, 997 F.2d 62, 67 (5th Cir. 1993).  Summary judgment is also appropriate if the party opposing the motion fails to establish an essential element of his case.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

## B.  Federal Exhaustion Requirement

Federal law clearly imposes an exhaustion requirement applicable to lawsuits filed by inmates.  Specifically, the Prison Litigation Reform Act of 1995 ("PLRA"), as amended, provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until* such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a) (emphasis added).  A federal district court must be mindful of the following guiding principles when an exhaustion defense has been asserted.

First, the PLRA's exhaustion requirements are "mandatory."  Porter v. Nussle, 534 U.S. 516, 524 (2002).

Second, a federal district court has "no discretion" to waive those exhaustion requirements. Gonzalez v. Seal, 702 F.3d 785, 788 (5th Cir. 2012).

Third, "there are no futility or other judicially created exceptions to the statutory exhaustion requirements."  Valentine v. Collier, 956 F.3d 797, 804 (5th Cir. 2020) (quotation marks and brackets omitted).

Fourth, so long as an inmate's claim involves an incident of prison life, the nature of his specific claim is immaterial.  "[T]he PLRA's exhaustion requirement applies to *all* inmate suits

4

about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." <u>Nussle</u>, 534 U.S. at 532 (emphasis added).

Fifth, it is also immaterial that a prison's grievance procedure may not be particularly "user friendly." Although "[a]ll available remedies must now be exhausted; those remedies need not meet federal standards, nor must they be plain, speedy, and effective." <u>Id.</u> at 524 (quotation marks omitted).

Sixth, if a grievance procedure potentially offers some form of relief to a prisoner, it is likewise immaterial whether it affords the possibility of the specific relief a particular prisoner seeks. On the contrary, "an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." <u>Booth v. Churner</u>, 532 U.S. 731, 741 n.6 (2001); <u>accord</u> <u>Valentine</u>, 956 F.3d at 804 ("So long as the State's administrative procedure grants authority to take *some* action in response to a complaint, that procedure is considered available, even if it cannot provide the remedial action an inmate demands." (quotation marks omitted)).

Seventh, a prisoner must fully exhaust his available administrative remedies **before** seeking federal relief:

> [T]here can be no doubt that *pre-filing* exhaustion of prison grievance processes is mandatory. … *It is irrelevant whether exhaustion is achieved during the federal proceeding.* Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted.

<u>Id.</u> at 788 (5th Cir. 2012) (emphasis added).

Eighth, although the exhaustion requirements may be inconvenient for a prisoner seeking relief, the United States Supreme Court has held that they are nonetheless necessary to accomplish the PLRA's goals, explaining:

Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, *Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.* In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

Nussle, 534 U.S. at 524-25 (emphasis added; citations and quotation marks omitted).

Ninth, the harshness of the exhaustion requirements is tempered in one significant respect, namely "the PLRA contains its own, textual exception to mandatory exhaustion." Ross v. Blake, 136 S. Ct. 1850, 1858 (2016). The Supreme Court explained:

Under § 1997e(a), the exhaustion requirement hinges on the "availab[ility]" of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones. And that limitation on an inmate's duty to exhaust … has real content. As we explained in Booth, the ordinary meaning of the word "available" is "'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" 532 U.S., at 737-738, 121 S.Ct. 1819 (quoting Webster's Third New International Dictionary 150 (1993); see also Random House Dictionary of the English Language 142 (2d ed. 1987) ("suitable or ready for use"); 1 Oxford English Dictionary 812 (2d ed. 1989) ("capable of being made use of, at one's disposal, within one's reach"); Black's Law Dictionary 135 (6th ed. 1990) ("useable"; "present or ready for immediate use"). Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are "capable of use" to obtain "some relief for the action complained of." Booth, 532 U.S., at 738, 121 S.Ct. 1819.

Blake, 136 S. Ct. at 1858-59.

The United States Supreme Court then identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Id. at 1859.

"First, … an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end – with officers unable or

consistently unwilling to provide any relief to aggrieved inmates." <u>Id.</u>  The Supreme Court explained:

> Suppose, for example, that a prison handbook directs inmates to submit their grievances to a particular administrative office – but in practice that office disclaims the capacity to consider those petitions.  The procedure is not then capable of use for the pertinent purpose. …  So too if administrative officials have apparent authority, but decline ever to exercise it.  Once again: the modifier "available" requires the possibility of some relief.  When the facts on the ground demonstrate that no such potential exists, the inmate has no obligation to exhaust the remedy.

<u>Id.</u> (citation, quotation marks, and textual alteration omitted).

Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.  In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." <u>Id.</u>  "When an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion.  But when a remedy is … essentially unknowable – so that no ordinary prisoner can make sense of what it demands – then it is also unavailable." <u>Id.</u> (quotation marks omitted).

Third, "the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." <u>Id.</u> at 1860.  Therefore, if a grievance procedure was devised so as to "trip up all but the most skillful prisoners" or if "officials misled or threatened individual inmates so as to prevent their use of otherwise proper procedures," then "such interference with an inmate's pursuit of relief renders the administrative process unavailable." <u>Id.</u> (quotation marks and brackets omitted).

However, the Supreme Court opined that "[g]iven prisons' own incentives to maintain functioning remedial processes, we expect that these circumstances will not often arise." <u>Id.</u> at 1859.

## II.  Material Facts

### A.  The Applicable Administrative Remedies

RCC is a state prison operated by LDPSC.  As such, RCC utilizes the Administrative Remedy Procedure ("ARP") for state prisons codified in the Louisiana Administrative Code. Under that procedure, an "offender commences the process by completing a request for administrative remedy (form B-05-005-ARP-1) or writing a letter to the warden, in which he briefly sets out the basis for his claim, and the relief sought."  La. Admin. Code tit. 22, pt. I, § 325(G)(1)(a)(i).  The procedure further provides:

> J.      Grievance Processing
>
>    1.      The following process and time limits shall be adhered to in processing any ARP request.
>
>        a.      First Step (time limit 40 days …)
>
>            ….
>            ii.      The warden shall respond to the offender within 40 days … from the date the request is received at the first step utilizing the first step response (form B-05-005-ARP-2).
>            iii.      If the offender is not satisfied with the decision rendered at the first step, he should pursue his grievance to the secretary, through the chief of operations/office of adult services via the second step.
>            ….
>
>        b.      Second Step (time limit 45 days)
>
>            i.      An offender who is dissatisfied with the first step response (form B-05-005-ARP-2) may appeal to the secretary of the Department of Public Safety and Corrections by so indicating that he is not satisfied in the appropriate space on the response form and forwarding it to the ARP screening officer within five days of receipt of the decision.

ii.   A final decision will be made by the secretary or designee and the offender shall be sent a response within 45 days from the date the request is received at the second step utilizing the second step response (form B-05-005-ARP-3).

….

iv.   If an offender is not satisfied with the second step response (form B-05-005-ARP-3), he may file suit in district court. …

c.   Deadlines and Time Limits.  No more than 90 days from the initiation to completion of the process shall elapse, unless an extension has been granted.  Absent such an extension, expiration of response time limits shall entitle the offender to move on to the next step in the process.

….

ii.   The warden may request permission for an extension of time not more than five days from the chief of operations/office of adult services for the step one review/response.

(a).   The offender must be notified in writing of such an extension.

(b).   Cumulative extensions of time shall not exceed 25 days unless the grievance concerns sexual abuse, in which case an extension of time up to 70 days may be made.

(c).   If the extension is approved, written communication shall be sent to the offender of the extension and a date by which the decision shall be rendered. Reasons for the extension of time for unusual circumstances shall be maintained in the administrative record.

La. Admin. Code tit. 22, pt. I, § 325(J).

The ARP also includes special provisions governing grievances concerning "emergency or sensitive issues."  Specifically, it provides:

H. Emergency or Sensitive Issues

    1.      In instances where the offender's request is of an emergency or sensitive issue as defined below, the following procedures will apply.

        a.      If an offender feels he is subjected to emergency conditions, he must send an emergency request to the shift supervisor. The shift supervisor shall immediately review the request to determine the appropriate corrective action to be taken. All emergency requests shall be documented on an unusual occurrence report (form C-05-001-W-1) by the appropriate staff member.

            ….

        b.      If the offender believes the complaint is sensitive and that he would be adversely affected if the complaint became known at the institution, he may file the complaint directly with the secretary through the chief of operations/office of adult services (second step response-form B-05-005-ARP-3). The offender must explain, in writing, his reason for not filing the complaint at the institution.

            i.      If the chief of operations/office of adult services agrees that the complaint is sensitive, he shall accept and respond to the complaint at the second step. If he does not agree that the complaint is sensitive, he shall so advise the offender in writing, and return the complaint to the warden's office. The offender shall then have five days from the date the rejection memo is received in the warden's office to submit his request through regular channels (beginning with the first step if his complaint is acceptable for processing in the administrative remedy procedure).

La. Admin. Code tit. 22, pt. I, § 325(H).

On April 21, 2020, Secretary LeBlanc issued a memorandum extending "[a]ll deadlines and timeframes relating to grievance deadlines" "until further notice."[11]

---

[11] Rec. Doc. 70-4 (emphasis omitted).

### B.  Plaintiff's Attempts to Exhaust his Administrative Remedies

On **April 8, 2020**, plaintiff utilized the LDPSC/RCC ARP to file an administrative grievance with respect to his COVID-related claim, requesting the following forms of relief:

1.      That I be temporarily released from the custody of RCC and the Louisiana Department of Public Safety and Corrections until after the spread of virus abates or a vaccine is manufactured.

2.      That I be released as if on parole to the custody of my wife, Mrs. Nicole Marshall.

3.      That as a condition of parole, I wear an ankle bracelet and follow all the guidelines of a parolee under Louisiana's parole laws.[12]

He thereafter supplemented that grievance and additionally requested that he be "transfer[red] to housing arrangement where I can be effectively social distance, as mandated by both federal and state governments."[13]

On **May 7, 2020**, Warden Tanner denied the grievance, which had been designated as RCC-2020-212, stating:

Your complaint has been reviewed and investigated.

Rayburn Correctional Center has and will continue to implement and monitor all of the procedures related to COVID19 mandated by the Department of Corrections and recommended by the Centers for Disease Control (CDC).  We have implemented procedures and practices on our own to stop or limit the spread of the virus among the offender and staff population.

The relief requested in this request is beyond Rayburn Correctional Center's scope of authority.  We do not recommend granting the relief requested in this request.[14]

---

[12] Rec. Doc. 75-1, p. 2.
[13] Id. at pp. 8-9.
[14] Id. at p. 4.

On or about **May 11, 2020**, plaintiff submitted a request for Second Step review.[15]   A Second Step Response Form was thereafter issued on **July 23, 2020**, and was received by plaintiff on **August 11, 2020**.  That response stated:

> Your request for an Administrative review of ARP# RCC-2020-212 has been received.  A qualified member of the Headquarters staff has reviewed your request in order to render a fair and impartial response.
>
> The response is clear and concise, as well as addressed your request appropriately.  As such, this office concurs with staff and finds no further investigation is warranted.
>
> Your request for relief is denied.[16]

That response completed the ARP for plaintiff's COVID-related claim.  See La. Admin. Code tit. 22, pt. I, § 325(J)(1)(b)(iv).

### III.  Analysis

Defendants' argument is straightforward:  The LDPSC/RCC ARP is available for use by inmates; pursuant to that ARP, plaintiff filed an administrative grievance concerning his COVID-related concerns; he then filed his Amended and Supplemental Complaint asserting his COVID-related claim in federal court while that administrative grievance was still pending; the final Second Step Response regarding his grievance was issued thereafter issued and received by him. Therefore:  because the claim was asserted in federal court while the administrative grievance was still pending, the claim must be dismissed due to his failure to comply with the mandatory, non-waivable exhaustion requirements provided in federal law.

---

[15] Id. at p. 5.
[16] Id. at p. 6.

Plaintiff counters:  (1) defendants failed to provide evidentiary support for their contention that plaintiff did not comply with the exhaustion requirement;[17] (2) his administrative remedies were either exhausted by operation of law when the Second Step Response was not issued by the deadline set forth in the ARP or, **alternatively**, the ARP was rendered "unavailable" by Secretary LeBlanc's suspension of response deadlines during the pandemic; and, in any event, (3) compliance with the exhaustion requirement is impractical, and therefore should be excused, given the magnitude of harm the pandemic poses to plaintiff.

Plaintiff's argument challenging the adequacy of the evidentiary support for the exhaustion defense should be rejected.  The Court has before it all the information necessary to assess the validity of that defense:  the ARP is set forth in the Louisiana Administrative Code; evidence of Secretary LeBlanc's suspension of the ARP deadlines is in the record; and the complete records concerning plaintiff's COVID-related administrative grievance have been submitted to the Court.

As to plaintiff's argument that Secretary LeBlanc failed to respond at the ARP's Second Step by the deadline set forth in the Administrative Code, it is true that "[a]vailable administrative remedies are exhausted in compliance with the PLRA when the time limits for the prison's response set forth in the prison grievance procedures have expired."  Gates v. Cook, 376 F.3d 323, 332 (5th Cir. 2004).  However, that general principle does not aid plaintiff in the instant case. Plaintiff's Amended and Supplemental Complaint asserting the COVID-related claim was filed on

---

[17] The United States Fifth Circuit Court of Appeals has explained:

> Failure to exhaust is an affirmative defense, such that the defendants have the burden of demonstrating that [the prisoner] failed to exhaust administrative remedies.  At the summary-judgment stage, this means that the defendants must establish beyond peradventure all of the essential elements of the defense of exhaustion to warrant summary judgment in their favor.

Wilson v. Epps, 776 F.3d 296, 299 (5th Cir. 2015) (citation and quotation marks omitted).

**May 8, 2020**,[18] but his request for Second Step Review was submitted to Secretary LeBlanc no earlier than **May 11, 2020**.[19]  **Therefore, it is beyond debate that Secretary LeBlanc's deadline for responding to the administrative grievance had not even commenced, much less expired, when the amended complaint was filed.**  The <u>Gates</u> principle is simply inapplicable where, as here, a prisoner asserted his claim in federal court before the response deadline expired.  <u>See</u> <u>Wilson v. Epps</u>, 776 F.3d 296, 302 (5th Cir. 2015); <u>Moses v. Tubbs</u>, Civ. Action No. 19-0328, 2020 WL 762291, at *4 (W.D. La. Jan. 28, 2020), <u>adopted</u>, 2020 WL 762861 (W.D. La. Feb. 14, 2020).[20]

Plaintiff's alternative argument that the suspension of the deadlines rendered the ARP "unavailable" is likewise meritless.  **The defendants informed plaintiff that his administrative grievance would be answered despite the suspension of the ARP deadlines, and that in fact occurred.**  Moreover, in any event, the suspension of the deadlines did not **eliminate** the ARP in whole or in part – it merely **extended the response deadline**.  However, "[a] delay in responding to a grievance does not permit a prisoner to run to court without finishing the administrative process." <u>Wheater v. Shaw</u>, 719 F. App'x 367, 371 (5th Cir. 2018).  Further, and most importantly, the law affords prison authorities the discretion to decide how their particular prison's grievance procedure will operate, **including** what submission and response deadlines will apply; and, as already noted, the PLRA simply does not require that those officials adopt or utilize procedures that are "speedy."  <u>Booth v. Churner</u>, 532 U.S. 731, 739 (2001).

---

[18] Rec. Doc. 57.

[19] Rec. Doc. 75-1, p. 5 (dated "5/11/20" by plaintiff).

[20] In the opposition to the instant motion, plaintiff's counsel states that the request for Second Step Review was mailed to Secretary LeBlanc on May 8, 2020, the same day the Amended and Supplemental Complaint was filed.  Rec. Doc. 70, p. 6.  That is incorrect, in that the request was not even signed until three days later.  In any event, that discrepancy is immaterial; the result is the same regardless.

Lastly, as to plaintiff's argument that the exhaustion of administrative remedies was impractical given that the pandemic presented an unprecedented need for emergency relief, that argument is flawed in several respects.

First, obviously, a prison itself is in the best position to provide its inmates with immediate relief in an emergency situation. Unquestionably, the prison is necessarily able to respond more swiftly to a prison emergency than a federal court, which can act only in the context of a lawsuit – and, even then, only **after** all parties have been afforded due process and their rights have been carefully considered, weighed, and respected.

Second, the United States Fifth Circuit Court of Appeals has already rejected the argument that the exigencies of the pandemic are such that they necessarily warrant an exception to the PLRA's mandatory exhaustion requirements. In Valentine v. Collier, 956 F.3d 797 (5th Cir. 2020), the district court had granted Texas prisoners a preliminary injunction requiring that their facility take certain precautions to protect against the spread of COVID-19, even though the prisoners failed to exhaust their administrative remedies before seeking federal intervention. In staying that injunction, the Fifth Circuit observed:

> [The district court] considered the [prison] process too lengthy to provide timely relief, and therefore incapable of use and unavailable under the special circumstances of the COVID-19 crisis. Other inmates have tried this argument before. In Blake v. Ross, 787 F.3d 693 (4th Cir. 2015), the court of appeals held that true exhaustion was not required when the inmate had "exhausted his remedies in a substantive sense by affording corrections officials time and opportunity to address complaints internally." Id. at 698 (quoting Macias v. Zenk, 495 F.3d 37, 43 (2d Cir. 2007)).
>
> The Supreme Court rejected this "special circumstances" exception "as inconsistent with the PLRA." Ross [v. Blake], 136 S. Ct. [1850], 1855 [(2016)]. In so holding, the Court noted that the precursor to today's § 1997e(a) "would require exhaustion only if a State provided 'plain, speedy, and effective' remedies ...." Id. at 1858 (quoting § 7(a), 94 Stat. 352 (1980)). By enacting the PLRA (which removed that proviso), Congress rejected this "weak exhaustion provision" in favor

> of an "invigorated" and absolute "exhaustion provision." Ibid. (quotation omitted). In the Supreme Court's view, reading a "special circumstances" exception into the PLRA would undo the PLRA and "resurrect" its predecessor. Ibid.
>
>   The district court's understanding of the exhaustion requirement similarly revivifies the rejected portions of the old regime. The crux of the court's concern is that [the prison] has not acted speedily enough. But that was an exception to exhaustion under the old § 1997e(a), not the current one.

Valentine, 956 F.3d at 804-05 (citation omitted);[21] accord Marlowe v. LeBlanc, 810 F. App'x 302, 306 (5th Cir. 2020) (finding that the district court's reasoning that it was compelled to act on plaintiff's COVID claims on an emergency basis in "the interests of justice" was "out-of-step with Supreme Court precedent").

Third, the LDPSC/RCC ARP in fact has a specific mechanism an inmate can use to seek **emergency** relief, **but plaintiff failed to use it**. In his amended complaint, he stated: "Plaintiff has also filed an emergency request for reasonable accommodations, asking that his conditions of confinement be adjusted to protect him from contracting COVID-19. *This emergency request was sent directly to Defendant LeBlanc.*"[22] That action, however, simply did not comply with the requirements of La. Admin. Code tit. 22, pt. I, § 325(H), quoted *supra*. As Warden Tanner

---

[21] As plaintiff's counsel notes, it is true that when the United States Supreme Court denied the related application to vacate the stay in the case, Justice Sotomayor issued a separate opinion, joined by Justice Ginsburg, stating:

> The Fifth Circuit seemed to reject the possibility that grievance procedures could ever be a "dead end" even if they could not provide relief before an inmate faced a serious risk of death. But if a plaintiff has established that the prison grievance procedures at issue are utterly incapable of responding to a rapidly spreading pandemic like Covid-19, the procedures may be "unavailable" to meet the plaintiff's purposes, much in the way they would be if prison officials ignored the grievances entirely. Here, of course, it is difficult to tell whether the prison's system fits in that narrow category, as applicants did not attempt to avail themselves of the grievance process before filing suit. But I caution that in these unprecedented circumstances, where an inmate faces an imminent risk of harm that the grievance process cannot or does not answer, the PLRA's textual exception could open the courthouse doors where they would otherwise stay closed.

Valentine v. Collier, 140 S. Ct. 1598, 1600-01 (2020) (citation omitted). It must be remembered, however, that those observations were not the holding of a majority of the justices and, therefore, have neither the weight nor the import plaintiff's counsel seems to suggest.

[22] Rec. Doc. 57, p. 25, ¶ 110 (emphasis added).

explained in an affidavit previously submitted in this case in connection with defendants' opposition to plaintiff's motion for a temporary restraining order:

    9.      No Emergency ARP has been submitted by Offender Marshall at RCC.

    10.     *Emergency ARPs must be given to the Unit Supervisor on the offender's housing unit,* who then must prepare an Unusual Occurrence Report (UOR) explaining the nature of the offender's emergency.

    11.     I checked the UOR records and determined that no UOR has been submitted in the year 2020, in which Offender Marshall's name appears. Thus, he has not submitted an Emergency ARP at RCC pertaining to COVID-19.[23]

It is clear that a prisoner must properly comply with his prison's procedures; he is not free to invent his own. The United States Fifth Circuit Court of Appeals has held:

> [P]roper exhaustion of administrative remedies is necessary. … [P]roper exhaustion means using all steps that a correctional facility holds out, and doing so *properly* (so that the correctional facility addresses the issues on the merits). Importantly, to properly exhaust a claim, a prisoner must comply with the correctional facility's … critical procedural rules.
>
>     These applicable procedural rules that a prisoner must properly exhaust are defined not by the PLRA, but by the correctional facility grievance process itself. And, our court takes a strict approach to the PLRA's exhaustion requirement, under which mere substantial compliance with administrative remedy procedures does not satisfy exhaustion; instead, we have required prisoners to exhaust available remedies properly.
>
>     Proper exhaustion is of crucial importance because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings. Requiring proper exhaustion gives prisoners an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors. This is essential to the PLRA's goals of not only reducing the quantity and improving the quality of prisoner suits but also affording corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.

Phillips v. Green, 814 F. App'x 852 (5th Cir. 2020) (citations, quotation marks, brackets, and ellipses omitted).

---

[23] Rec. Doc. 62-2, pp. 1-2 (emphasis added).

For all of these reasons, the undersigned finds that defendants' arguments are well founded and that federal mandates that plaintiff's COVID-related claim be dismissed without prejudice because it was prematurely asserted in federal court before his administrative remedies were exhausted.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that defendants' motion for Motion for Summary Judgment, Rec. Doc. 68, be **GRANTED** and that plaintiff's COVID-related claim against Secretary James LeBlanc and Warden Robert Tanner be **DISMISSED WITHOUT PREJUDICE** pursuant to 42 U.S.C. § 1997e(a).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[24]

New Orleans, Louisiana, this ___1st__ day of September, 2020.

**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**

---

[24] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.

18